## DOUGLAS et al. v. ABRAHAM.

*(Circuit Court, S. D. Ohio, W. D. May 14, 1892.)*

No. 4,329.

1. PATENTS FOR INVENTIONS—INFRINGEMENT—FLUSHING TANKS—VALVES.

Letters patent No. 369,843, issued September 13, 1887, to J. & G. Douglas, were for an improvement in flushing tanks for water-closets, which consisted of a spherical rubber valve, resting in a cup-shaped seat and closing the discharge pipe, and which, when drawn from its seat, floats until the tank is nearly empty, when the downward current draws and wedges it into the seat, which is of slightly less diameter than the valve, and deep enough to embrace it, when in position, for more than half its size, thereby forcing it into complete contact with the surface of the seat. *Held*, that this is not infringed by a device whose operation is precisely similar, but in which the valve is of metal and has a rubber seat, and is, moreover, somewhat of an acorn shape, so that less than half its size is embraced by the seat, which has a flaring mouth.

**2. SAME—EXTENT OF CLAIM—WAIVER.**
  The original claim of the Douglas patent was for "a valve seat so arranged as that the valve will be sucked or drawn and wedged therein in the act of closing." The claim was rejected as being met by another patent. The patentees acquiesced in rejection, and it was canceled; and they then claimed "a seat slightly smaller in diameter than the valve, and cupped to receive the valve for more than half its size." *Held,* that they must be restricted to this, as their acquiescence was a waiver of the broader claim.

In Equity. Suit for infringement of letters patent No. 369,843, issued to J. & G. Douglas, September 13, 1887, for improvement in flushing tanks for water-closets. Bill dismissed.

*Arthur Stem,* for complainants.
*Geo. J. Murray,* for defendant.

SAGE, District Judge. The structure set forth in complainants' patent is a flushing tank with a discharge pipe opening into it at or near the bottom, and provided with an elastic valve composed of a hollow rubber ball, which floats when raised from its seat. The seat is in the form of a cup, so that the valve is guided into proper position, and slightly wedged in by the pressure of the water above it, thus making a firm closure. The overflow pipe is distinct from the valve and its opening, and communicates with the discharge pipe below the valve. The top of the overflow pipe is closed by a cap held down by a weight, which will float and raise the cap when the water rises above a certain height. The rubber ball valve is connected by a chain to a lever at the top of the tank; the lever being so weighted as to be normally in position to permit the valve to close. By pulling a cord so attached to the lever as to raise it, the ball valve is lifted from its seat, and the water passes into the discharge pipe. When the cord is released the lever returns to its normal position; but the ball, being hollow, floats on the water, and the discharge continues until the tank is nearly empty. Then, to quote from the specification, "the downward current caused by the pressure of the atmosphere from above, and the created vacuum beneath, will exert such an influence as will draw the valve into its seat, and deposit it thereon; and, the seat being smaller in diameter than the valve, the latter will be drawn or wedged into it so snugly as to stop the passageway, and prevent any more of the liquid reaching the discharge pipe until the valve is forced up again by the pull." The patentees state in the specification that the valve cup or seat "is made deep enough so that it will permit the valve to enter and be embraced for more than half its size, as shown. The diameter of the seat, also, is less than the diameter of the valve itself, so that, when the latter is in position, it will be wedged and prevented from becoming disengaged except when pulled out." The drawing shows the valve cup or seat as described in the specification; that is, deep enough to permit the valve to enter, and to be embraced for more than half its size.

The first claim of the patent, which is the only one sued upon, is as follows:

"The pull, B, connected to the fulcrumed and weighted arm, C, and chain, D, holding elastic valve, V, in combination with the valve seat, F, over the

discharge aperture; the seat being slightly smaller in diameter than the valve, and cupped to receive the valve for more than half its size, substantially as shown and described."

The discharge pipe of the defendant's tank opens into it near the bottom. A metal ball and a rubber seat are provided to close the discharge. At the top of the tank a weighted lever, whose normal position is such as to leave the ball valve closed, is connected to the ball by two pieces of wire, which constitute, in effect, a chain, and permit the lever to assume its normal position without forcing the ball down, but pull the ball up when the weighted end of the lever is raised. There is a cup over the discharge aperture, which acts to enlarge the valve seat so as to guide the ball to its proper position, and wedge it slightly in place. The only differences between the two structures to which it will be necessary to refer are that the defendant substitutes a metal valve for the rubber valve of the complainants' tank, and a rubber seat for the metal seat of the complainants' tank. This metal ball valve is hollow and light, and will float in the water when lifted from its seat; and, while it is nearly spherical, it is somewhat acorn shape, so that its greatest lateral diameter is above the center of its perpendicular diameter when in position. The other point of difference claimed on behalf of the defendant is that whereas the ball valve of the complainants' tank, when seated, is embraced by the valve cup for more than half its size, the defendant's valve, when seated, is less than half its perpendicular diameter within the cup or valve seat.

It is contended for complainants that the language of this claim, construed in the light of the specification, referring particularly to the description of the device, and its operation, "means that the valve seat is cupped so as to conform with the shape of the valve, and of a size to receive the valve a sufficient distance to secure the wedging of the valve in the seat." The first objection to this construction is that the claim would then be substantially the original second claim as it appears in the file wrapper and contents, which are in evidence. That claim was for "a spherical elastic valve, operated by a pull, and designed to open or close the discharge orifice of a flushing tank; the valve seat being so arranged as that the valve will be sucked or drawn and wedged therein in the act of closing, substantially as shown and described." But that claim was rejected, as functional and indefinite, and substantially met by English patent of 1848, No. 12,098 to Hosmer, and the rejection was acquiesced in, and the claim canceled. The second objection is that the field of invention to which the device described in the complainants' patent belongs was so occupied when the complainants made their application that there was no room for more than the precise construction and claim set forth in their patent. They could not move from these in any direction without encountering an anticipation. They must, therefore, be confined strictly to such a construction. Moreover, the drawing shows a valve seat deep enough to permit the valve to enter and to be embraced for more than half its size, and the specification is explicitly and unmistakably in exact accord with the language of the claim, literally con-

strued. The complainants' acquiescence in the rejection of original claim 2, and its cancellation, amounted to a waiver of the broad claim therein made; and for that reason, also, the construction claimed, which would now, in effect, revive that claim, is altogether inadmissible.

The question, then, is, does the defendant infringe the claim, as above construed? The substitution of the metal valve for the rubber valve, and of the rubber seat for the metal seat, is a mere transposition, which any mechanic could make, without invention, and it would not avoid infringement. But the defendant's valve has no more tendency to wedge itself into its seat than has any of the well-known wash-basin or bath-tub valves; and it has, if not less, certainly not more, contact surface than most of the old forms of plug valves. When the complainants' valve is sunk to its place in the valve seat the upper edge of the seat is a little above the greatest lateral diameter of the valve. The result is that the valve is so wedged in as to be held tightly in position by the contracted mouth of the seat, and by its elasticity it expands and fits the inside surface of the seat below its mouth, thereby precluding its withdrawal until it is partially collapsed by the upward force exerted in pulling it out. On the other hand, the greatest lateral diameter of the defendant's valve, when sunk to its place in the valve seat, is more than a quarter of an inch above the top of the seat, and the peculiar gripping or holding effect of the seat upon the valve in the complainants' device is wanting. The valve seat is not cupped so as to receive the valve for more than half its size. More than half its perpendicular diameter is above the mouth of of the seat, and the mouth is flaring, not contracted. The defendant's construction is more nearly like the Dalton and Ingersoll valves, as shown by an exhibit put in evidence by complainants, made in accordance with prior patents issued to Scott, and admitted to have been in public and common use prior to complainants' invention. The defendant does not infringe the complainants' patent.

The bill will be dismissed at complainants' cost.